MORRIS vs. THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE and another.

1. Under a provision of a city charter, that " where streets are ordered to be opened, graded, or paved, or where side or crosswalks are ordered to be made, the owners of property on the line thereof may open, grade, and pave, or lay side or crosswalks at their own expense, but in the manner directed by the board of councilmen, provided they do the same within a reasonable time, to be fixed by said board, otherwise said improvement shall be done by the city, in the manner provided by this act." *Held*—

1. That permission given to property owners to grade a street, for opening, regulating, and grading which an ordinance was passed upon their application, did not take away from the council their power over the matter of regulating and grading the street.

2. That the property owners having graded only a part of the street, leaving the rest of it ungraded, and having ceased to do any work on it, the council would not be restrained from completing the work.

2. A party has no standing to invoke the aid of the court against the execution of a public improvement by the municipal authorities, because he will thereby be made liable to be assessed for such improvement, if, as he insists, the authorities have no power to make the improvement.

On order to show cause why an injunction should not issue. On bill and answer, and affidavits annexed thereto, respectively.

*Mr. S. C. Mount*, for complainant.

*Mr. A. T. McGill*, for defendants.

THE CHANCELLOR.

The bill prays an injunction to restrain the defendants, the mayor and council of the city of Bayonne, from prosecuting the work of grading 43d street, in that city, from Avenue E to New York bay, under a contract made with them for the work by the defendant, Daniel Peck. It appears, from the bill and answer, and the affidavits thereto respectively annexed, that, in 1871, the board of councilmen, on the petition of property owners, duly passed an ordinance to open and regulate and grade the street in question, from Avenue E to New York bay ; that, after the passage of the ordinance, the property owners on the line of that portion of the street which was to be graded, applied to the council for leave to do the work themselves. The desired permission was accorded, the council directing that the work be completed by the 1st of December, 1871. The council proceeded to appoint commissioners to open the street, and the latter performed all the service required of them in that behalf. Whether they were discharged, or not, is a point as to which the complainant and

the defendants differ. The property owners graded the street from Avenue C to Avenue E, but no further, leaving ungraded so much of it as lies between Avenue E and New York bay. They having ceased to work on the street in the fall of 1873, the council, in July or August, 1874, advertised for proposals for completing the work, and awarded the contract to the defendant, Peck, with whom they entered into an agreement accordingly. The complainant insists, substantially, that the power of the council over the matter of regulating and grading the street under the ordinance, was at an end when they gave the property owners permission to do the grading themselves. But the proviso of the sixty-eighth section of the act of 1869, the original act of incorporation, is fatal to this claim. That section is as follows : " In all cases where streets or avenues are ordered to be opened, graded, or paved, or where side or crosswalks are ordered to be made, the owners of property on the line thereof may open and grade and pave, or lay side or crosswalks, at their own expense, but in the manner directed by the board of councilmen, provided they do the same within a reasonable time, to be fixed by said board, otherwise said improvement shall be done by the city, in the manner provided by this act." The complainant, with the other land owners, in August, 1874, after the appearance of the advertisement soliciting proposals for the work, remonstrated, in writing, against the performance of the work by the city. Their remonstrance was presented at the meeting of the council, at which the bids for the work were received. The complainant insists that, under the fifty-eighth section of the supplement of 1873, to the revised charter of the city, (*Pamph. L.,* 1873, *p.* 468,) this remonstrance, being signed by the owners of more than half of the property, according to lineal feet, to be assessed for the improvement, should have been effectual to prevent the council from proceeding with the work. The section just referred to contains this proviso : " Provided, the said board of councilmen shall not proceed to make any improvement, if the owners of more than one-half of the property per lineal feet

front to be assessed for the improvement, shall remonstrate against the same being made." That provision, however, appears to have reference solely to the improvement which is the subject of the section—the opening of streets.

But the complainant further objects, that the contract binds the contractor to repair, without charge or compensation therefor, the sidewalks and carriage way of so much of the street as has already been graded by the property owners. This, he argues, has undoubtedly tended to increase the rates charged for the work, for which compensation is to be received under the contract, while by the charter the property owner, in front of whose land the sidewalk is, is bound to pay for repairing it, and repairs to the carriage way are to be paid for out of the money raised by tax for repairs of streets. The answer, however, denies that the contract contains any such provision, and it sets out a clause which it says is all that is contained in the contract, on that score. It is merely a requirement that the contractor shall, without extra charge, regulate the street to its full width, removing all surplus earth, stones, &c., in that part of the street which has been graded by the property owners. The ordinance of 1871 provides for the opening, and regulating, and grading the street. By the charter it might lawfully include all these different improvements. The applicants requested the council to dispense with a preliminary map and report of commissioners in respect to these improvements, and, as under the charter they might, the council granted the request, and proceeded to execute the street opening, accordingly. As to the rest, the regulating and grading, the property owners asked to be permitted to do that themselves. To this the council assented, limiting the time within which the work was to be completed. After giving to the property owners more than two years further time, and still finding the work unfinished, they proceeded under the ordinance, to complete the work themselves. No valid reason appears to me for preventing them from so doing. But if it be conceded that the council are proceeding illegally, and that, as the com-

plainant insists, they have no power to do the work under the ordinance, and are therefore proceeding without authority of law, the complainant is not entitled to the relief he seeks. He files his bill in behalf of himself and other property owners who may be liable to be assessed for the improvement. No lawful assessment can be imposed upon the property owners if the proceedings complained of are justly liable to the objections he makes. He has therefore no occasion to invoke the aid of this court against the city to prevent the execution of the contract. Of the necessity for the improvement the legislature have made the council the judges. The work and the contract are within the scope of the powers of the council. There is no evidence of any fraud in the contract. The order to show cause will be discharged, and the bill dismissed, with costs.